[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 29, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-14913

_____

D. C. Docket No. 03-20980-CR-PCH

UNITED STATES OF AMERICA,

                                                     Plaintiff-Appellee,

versus

LEONARDO ROSQUETE,
a.k.a. Leonardo Firmo Rosquete-Trusillo,

                                                     Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(November 29, 2006)

Before EDMONDSON, Chief Judge, BARKETT and COX, Circuit Judges.

PER CURIAM:

Leonardo Rosquete appeals his federal sentence for conspiracy to possess

with intent to distribute 100 kilograms or more of marijuana. Specifically, Rosquete argues that his sentence should not have been enhanced under the career offender provisions of U.S.S.G. § 4B1.1 on the basis of his prior conviction under the Travel Act, 18 U.S.C. § 1952(a).

Because we conclude that the district court properly relied upon Rosquete's Travel Act conviction under Shepard v. United States, 544 U.S. 13 (2005), we affirm Rosquete's sentence.

## BACKGROUND

This appeal arises out of an indictment against Rosquete (along with several co-defendants) for (1) conspiracy to possess with intent to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. § 846; and (2) possession with intent to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). At sentencing, the district court dismissed Count 2 on the government's motion. Rosquete pled guilty to the remaining count without a written plea agreement.

In its Presentence Investigation Report (PSI), the U.S. Probation Office set Rosquete's base offense level at 28, based on the amount of marijuana alleged in the indictment. It then recommended a nine-level enhancement pursuant to

U.S.S.G. § 4B1.1(a),[1] relying upon two prior drug convictions: a 1993 conviction

in the Middle District of Florida and a 1995 conviction in the District of Maine.

The PSI also noted, but did not rely upon, a 1996 conviction in the Northern

District of Texas for violating the Travel Act, 18 U.S.C. § 1952(a).[2] After

reductions for acceptance of responsibility, Rosquete's adjusted base offense level

was 34. With a criminal history category score of VI, the resulting presumptive

guidelines range was 262-327 months' imprisonment.

---

[1] Section 4B1.1(a) authorizes such an enhancement if "(1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense."

[2] Under the Travel Act,

Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to—

    (1)    distribute the proceeds of any unlawful activity; or
    (2)    commit any crime of violence to further any unlawful activity; or
    (3)    otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

and thereafter performs or attempts to perform—

    (A)    an act described in paragraph (1) or (3) shall be fined under this title, imprisoned not more than 5 years, or both; or
    (B)    an act described in paragraph (2) shall be fined under this title, imprisoned for not more than 20 years, or both, and if death results shall be imprisoned for any term of years or for life.

18 U.S.C § 1952(a). Notably, the Travel Act specifically defines "unlawful activity" to include "any business enterprise involving ... controlled substances." Id. at § 1952(b)(1).

3

Rosquete objected to the PSI in the district court on two grounds: First, he argued that the career offender enhancement violated Blakely v. Washington, 542 U.S. 296 (2004). Second, he maintained that the Northern District of Texas, in sentencing him for his 1996 Travel Act convictions, had relied upon a PSI that asserted that the two drug convictions relied upon in the current case were "related." That finding, Rosquete suggested, collaterally estopped the government from arguing that the two convictions could be considered separately in this case, and from therefore satisfying the "two prior felony convictions" prong of U.S.S.G. § 4B1.1(a).

After granting the government's motion for a downward departure based upon Rosquete's substantial assistance, the district court rejected Rosquete's arguments, holding that (1) Blakely does not apply to the federal guidelines; and (2) the court was not bound by the Northern District of Texas's conclusion that the predicate convictions were "related."

On appeal, we held that the district court committed statutory error under United States v. Booker, 543 U.S. 220 (2005), by sentencing Rosquete under a mandatory guidelines system. We also held that Rosquete had introduced insufficient proof to establish that the Northern District of Texas had relied upon the PSI's characterization of the two prior drug felonies as "related" in sentencing

4

him for the Travel Act conviction. However, in remanding for resentencing in light of <u>Booker</u>, we left open the possibility that Rosquete could introduce further proof concerning his collateral estoppel argument. <u>See</u> <u>United States v. Rosquete</u>, No. 04-15862, 2005 WL 1519354 (11th Cir. June 28, 2005) (unpublished).

On remand, the government argued that collateral estoppel was a matter of law, and therefore the district court was barred from considering <u>de novo</u> whether the two underlying drug felonies were related. The government also contended that, even if collateral estoppel <u>did</u> bar consideration of the two drug felonies as separate offenses, the Travel Act conviction was, itself, a drug-related offense under U.S.S.G. § 4B1.1(a), thereby justifying the application of the career offender enhancement.

In light of further evidence provided by Rosquete, the district court concluded that it was bound by the Northern District of Texas's finding that Rosquete's 1993 and 1995 drug convictions were related. However, the district court accepted the government's alternative argument that the 1996 Travel Act conviction was, itself, a drug-related offense, thereby providing the necessary support for an enhancement pursuant to U.S.S.G. § 4B1.1(a). Taking into account the mitigating factors argued by Rosquete, the district court sentenced him to 180 months imprisonment, followed by eight years supervised release. Rosquete timely

filed this appeal.[3]

DISCUSSION

The central issue before us is whether the district court was correct that Rosquete's 1996 conviction for violating the Travel Act constitutes a felony that is a "controlled substance offense" for purposes of U.S.S.G. § 4B1.1(a). Although Travel Act convictions such as Rosquete's are undeniably felonies (since they carry a maximum sentence exceeding one year), they do not categorically constitute a "controlled substance offense," which the guidelines define as "an offense under federal or state law . . . that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b). That is to say, it is possible to be convicted under the Travel Act for an offense that is not a "controlled substance offense."

To ascertain whether Rosquete's Travel Act conviction constitutes a "controlled substance offense," then, we look beyond the language of the statute to

_____

[3]On September 25, 2006, two days before the case was to be argued before this Court, the government submitted a Motion to Supplement the Record on Appeal, including with it a copy of the superseding information filed in the Travel Act case. That information, to which Rosquete pled guilty, specified that the "unlawful activity" he intended to facilitate was "a business enterprise engaged in the felonious buying and selling of controlled substances." We do not consider this submission in the resolution of Rosquete's appeal.

6

the facts of the underlying conviction, but only to the extent permitted by the Supreme Court in <u>Shepard v. United States</u>, 544 U.S. 13, and <u>Taylor v. United States</u>, 495 U.S. 575 (1990). That is, we may look only to "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." <u>Shepard</u>, 544 U.S. at 26; <u>see</u> <u>United States v. Dowd</u>, 451 F.3d 1244, 1254 (11th Cir. 2006).

Rosquete's plea agreement in the Travel Act case included the following stipulation: "The Defendant agrees and stipulates that the facts set forth in the Factual Resume are a true and correct statement of his offense conduct and that such facts may be taken into consideration by the Court in determining what sentence to impose." Because the plea agreement so provides, and because Rosquete does not argue to the contrary, we therefore look to the Factual Resume from his Travel Act conviction to ascertain whether that conviction does, in fact, constitute a "controlled substance offense."

One passage from the Factual Resume is particularly instructive:

> In the latter part of February 1991, LEONARDO FIRMO ROSQUETE, traveled with Alberto Quinones from the state of Georgia to Fort Worth, Texas. Quinones was coming to Texas as part of his ongoing business relationship with Victor Matias Costa in the

7

trafficking of controlled substances. <u>ROSQUETE knew that the purpose of the trip was to facilitate that relationship</u>. ROSQUETE and Quinones arrived in the Fort Worth area and checked into the Hampton Inn located on Interstate Highway 20 in Arlington, Texas which was not far from the apartment in Arlington. ROSQUETE used the name of "Angel Rivera" when he registered at the hotel on February 26, 1991. Rosquete, Quinones and Lazaro Piril Ramos then met with Victor Costa and on the afternoon of February 26 they went to Buz Post Chevrolet at I-20 and Cooper Street in Arlington, Texas and there Ramos and Quinones purchased a 1987 Toyota pickup truck using $7,200 in cash to pay for the vehicle. The truck was taken back to Costa's house where it was loaded with approximately $350,000 in cash which had been derived by Costa from the sale of controlled substances furnished to him on consignment by Quinones. <u>In assisting Quinones in his travels to Texas and in obtaining and loading the Toyota truck with drug proceeds, ROSQUETE helped to promote and carry on the illegal activities of Quinones and Costa</u>. A few days earlier, Quinones and Guillermo Casado had delivered 10 kilograms of cocaine and over 25 kilograms of marihuana to Costa at Costa's residence. While ROSQUETE , Ramos and Quinones were in the Fort Worth area, Costa distributed all of the drugs except for approximately 15 kilograms of marihuana which remained at his residence until February 28, 1991 when it was seized by agents of the Drug Enforcement Administration. On February 27, 1991, Quinones, Rosquete, and Ramos left the state of Texas, each ultimately going to another state or country.

(emphasis added).

As noted above, the guidelines define a "controlled substance offense" as "an offense under federal or state law . . . that prohibits the . . . distribution, or dispensing of a controlled substance . . . with intent to . . . distribute, or dispense." U.S.S.G. § 4B1.2(b). In addition, Application Note 1 expands this definition to "include the offenses of aiding and abetting, conspiring, and attempting to commit

such offenses." Thus, given the facts to which Rosquete stipulated, especially his knowledge of and participation in facilitating the trafficking of controlled substances, we conclude that Rosquete's Travel Act conviction was for an offense under federal law that prohibits the aiding and abetting of the distribution of a controlled substance with intent to distribute, and that it was therefore a "controlled substance offense" under § 4B1.2(b).

The district court thus correctly applied the "career offender" enhancement in U.S.S.G. § 4B1.1(a). Therefore we need not reach the government's other arguments for affirming Rosquete's sentence.

**AFFIRMED**.